Filed 5/23/24  Robben v. County of Tuolumne CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TODD ROBBEN, Petitioner and Appellant, v. COUNTY OF TUOLUMNE et al., Respondents; CAL SIERRA DISPOSAL et al. Real Parties in Interest. | F086049 (Super. Ct. No. CV64848) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  Kevin M. Seibert, Judge.

Todd Robben, in pro. per., for Petitioner and Appellant.

Sarah Carrillo, County Counsel, Christopher Schmidt, Deputy County Counsel; Best Best & Krieger, Amy E. Hoyt for Respondents.

No appearance for Real Parties in Interest.

-ooOoo-

Todd Robben, a self-represented litigant, appeals from an order dismissing his action after it found him to be a vexatious litigant under Code of Civil Procedure section 391, subdivisions (b)(1) & (3)[1] and Robben failed to post the security the trial court ordered. (§ 391.3.)

Robben challenges the trial judge's refusal to recuse himself pursuant to Robben's motion to disqualify Judge Seibert either for cause under section 170.1, subdivision (a)(6)(A)(iii) or peremptory challenge under section 170.6. We exercise our discretion to treat this portion of the appeal as a petition for writ of mandate and deny writ relief.

Robben also challenges dismissal of the action based on his failure to file security. He contends the trial court erred in finding him to be a vexatious litigant as he did not meet section 391, subdivision (b)(1)'s vexatious litigant definition, the trial court erred by finding it was not reasonably probable he would prevail in the action, upon which the court based its order to furnish security, and the trial court should have granted his application to vacate the trial court's prefiling order. Finding no merit to Robben's contentions, we affirm the dismissal of the action.

### FACTUAL AND PROCEDURAL BACKGROUND

*The Petition for Writ of Mandate and Complaint*

In September 2022, Robben filed a petition for writ of mandate and complaint for declaratory and injunctive relief against the County of Tuolumne (the County), County of Tuolumne Solid Waste Committee, County of Tuolumne Board of Supervisors, and Jim McHargue, the County of Tuolumne Solid Waste Director (collectively, the County respondents). Robben named Cal Sierra Disposal (Cal Sierra) and Waste Management Inc. (Waste Management) as real parties in interest.

Robben alleged Cal Sierra and Waste Management wrongfully terminated his employment in retaliation for his whistleblower complaints about Cal Sierra's alleged

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2.

state and federal law violations. The petition asserted a single cause of action alleging the County defendants failed to discharge a purported mandatory duty under Government Code section 815.6 to investigate Robben's complaints of illegal activity at Cal Sierra's transfer stations before the County approved a 10-year extension of the Cal Sierra/Waste Management franchise agreements.

The petition sought a peremptory writ of mandate directing the County Board of Supervisors to set aside or vacate the resolutions extending the Cal Sierra and Waste Management contracts and requiring McHargue to investigate Robben's allegations against Cal Sierra and Waste Management. Robben also sought declarations that the County defendants violated Government Code section 815.6, the franchise agreements are void, a neutral unbiased entity must investigate his complaints, and the County defendants have a conflict of interest or financial interest in renewing the agreements.

### *The Motion to Declare Robben a Vexatious Litigant*

On October 31, 2022, the County (and its elected and appointed officials named in their official capacities) filed a motion to declare Robben to be a vexatious litigant and a supporting request for judicial notice of documents from federal and state court cases Robben filed in pro per. The County also sought a prefiling order prohibiting Robben from filing any new litigation in pro per without first obtaining leave of the presiding justice or judge of the court where the litigation is proposed to be filed, and requiring Robben to furnish $50,000 security within 30 days, staying the case until security is furnished, and warning that the action would be dismissed with prejudice should Robben fail to furnish the security.

The County asserted Robben qualified as a vexatious litigant under section 391, subdivision (b)(1), because he filed nine civil actions in pro per in the preceding seven years that were determined adversely to him.[2] The County also argued Robben qualified

---

[2]     The County filed a request for judicial notice, in which it asked the trial court to take judicial notice of state and federal court records from nine cases, the petition for writ

3.

as a vexatious litigant under section 391, subdivision (b)(3), because the Ninth Circuit Court of Appeals found in one of his appellate cases that the appeal was frivolous and the District Court of Nevada found in one of his district court cases that Robben engaged in frivolous conduct, employed unreasonable delay tactics, disobeyed court orders and threatened the court.

The County and Cal Sierra also presented evidence of Robben's harassing and threatening conduct in connection with pending litigation. This conduct included Robben sending threatening e-mail messages to County employees, which resulted in the issuance of restraining orders against Robben and leaving threatening voice messages for Cal Sierra's attorneys. The evidence Cal Sierra presented included jury verdict forms from Robben's 2017 criminal conviction for threatening judges and court personnel.

The County requested a prefiling order under section 391.7, subdivision (a), and an order requiring Robben to furnish security for the County's benefit to ensure payment of the County's reasonable expenses incurred in defending the petition. In support of the request for security, the County asserted Robben did not have a reasonable probability of prevailing in the litigation because (1) he lacked standing as he was not a party to the County's contract with Cal Sierra, (2) the petition failed to allege Robben had an inadequate legal remedy, (3) the petition failed to state an action for administrative mandamus as the approval of Cal Sierra's contracts was a legislative decision that did not require an administrative hearing, and (4) the petition failed to state an action for traditional mandamus as it did not cite any statute or ordinance that required the County to investigate Robben's complaints.

On November 3, 2022, Robben filed a "MOTION FOR DEFAULT AND ENTRY OF JUDGMENT AGAINST THE RESPONDENTS AND REAL PARTIES IN

_____

of mandate filed in the present case, and two requests for civil harassment restraining orders filed by James Garcia and Matt Fryer seeking to restrain Robben, all of which were attached to the request.

INTEREST" and "SPECIAL MOTION TO STRIKE RESPONDENTS MOTION FOR VEXATION LITIGANT." Robben argued the County defendants defaulted by failing to answer his petition and the motion to declare him a vexatious litigant should be stricken pursuant to section 425.16. The following day, Robben filed an identical motion and a request for judicial notice of the County defendants' alleged Brown Act violations. On November 7, 2022, Robben filed a "NOTICE OF VERIFIED FIRST AMENDED SPECIAL MOTION TO STRIKE RESPONDENTS['] MOTION FOR VEXATIOUS LITIGANT ORDER AND [ROBBEN]'S VERIFIED FIRST AMENDED SPECIAL MOTION TO STRIKE RESPONDENTS['] MOTION FOR VEXATIOUS LITIGANT ORDER." Robben asserted the vexatious litigant motion must be stricken because he presented a prima facie anti-SLAPP case.

On November 7, 2022, the Honorable Laura Krieg held a hearing on Robben's petition, which Robben attended. Judge Krieg noted that while the writ petition was set for hearing that day, there was no proof of service in the court file for the County, and the County filed a motion to declare Robben a vexatious litigant, which stayed the case pursuant to section 391.6. Judge Krieg quickly reviewed the vexatious litigant motion and determined it had a prima facie basis and was not a stalling tactic to avoid the petition. Consequently, Judge Krieg ordered the hearing on the petition to trail the vexatious litigant motion and a hearing on the merits would not be held until further court order.

### Robben's Motion to Disqualify Judge Krieg

On November 8, 2022, Robben filed a motion to disqualify Judge Krieg for cause. Robben asserted: (1) Judge Krieg and deputy county counsel Christopher Schmidt, who is representing the County in this litigation, impermissibly "fraternized" as they were seen together around town at legal functions; (2) Judge Krieg had a financial interest in the litigation; and (3) Judge Krieg would not allow him to file his special motion to strike and deferred ruling on the motion.

Judge Krieg filed a verified answer to the motion in which she responded to and rebutted Robben's allegations. Robben filed a reply in which he accused Judge Krieg of making "untrue statements."

On December 20, 2022, a Madera County Superior Court judge issued an order denying the disqualification motion, finding Robben failed to present any evidence showing grounds to disqualify Judge Krieg for cause.

On December 27, 2022, Robben filed a peremptory challenge to Judge Krieg pursuant to section 170.6. Two days later, the Honorable Kevin M. Seibert issued an ex parte order scheduling the vexatious litigant motion and motion for entry of judgment to be heard before him on January 20, 2023. Judge Krieg subsequently issued an ex parte order which stated that after judicial review of the December 27, 2022 peremptory challenge, the court found a peremptory challenge was previously approved in a related case on December 22, 2022. Consequently, Judge Krieg ordered the December 27, 2022 peremptory challenge filed in the present case stricken, and the approved peremptory challenge filed in the related action on November 29, 2022, was confirmed as the order within the present case.

### The Vexatious Litigant Motion is Granted

The hearing on the County's motion to declare Robben a vexatious litigant was held before Judge Seibert on January 20, 2023. That day, Robben filed a document entitled "PETITIONER'S OBJECTIONS TO TENTATIVE ORDER DATE 01-19-2023," which the trial court struck as untimely. The trial court, however, allowed Robben to provide oral argument based on the stricken opposition.

The trial court adopted its tentative ruling and granted the motion to declare Robben a vexatious litigant. The trial court noted that despite the seriousness of the motion, Robben failed to file any opposition to the motion. The trial court determined Robben unsuccessfully maintained the nine cases the County identified in its motion, as well as an additional 22 cases the trial court located during its own research, within the

6.

past seven years while acting as his own lawyer. The trial court stated that even if Robben had filed an opposition to the motion, it could not "see any meaningful opposition that might avoid a finding which—quite frankly—appears long overdue." The trial court explained: "A review of the various dismissals and denials reveals a disturbing pattern: [Robben] threatens anyone who does not give in to his demands, then files a lawsuit against them, then fails either to state a cognizable claim or prosecute the action timely, leading to some version of dismissal. This behavior is precisely what landed him in prison …, and has continued to serve as his "to-go" reaction when life disappoints. Although, to be fair, it would appear that [Robben] has rarely lost a case on the merits, that is likely because he [h]as never been able to lead a case to the point where merits mattered. His repeated filing of lawsuits with no real intention or ability to secure relief is the precise fundamental evil which [section] 391 et seq[.] seeks to eradicate." Accordingly, the trial court found Robben to be a vexatious litigant and "prohibited [him] from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding justice or presiding judge of the court where the litigation is proposed to be filed."

Moving to the County's request for security, the trial court considered whether Robben had a reasonable probability of prevailing on the merits. The trial court first addressed whether Robben had standing to pursue the action. The trial court noted that standing may be conferred where the litigation's object is to procure the enforcement of a public duty, but if the litigant is driven by personal objectives rather than broader public concerns, a court may find the litigant lacks such standing. The trial court found that "a fair reading of the pleading leads one to conclude that this is mostly, if not entirely, personal for [Robben]," as it appeared the lawsuit was "driven by his personal quest to 'burn down' his former employer for firing him by attacking its financial livelihood (the 10-year contract)," and rather than having the public interest in mind, he "seem[ed] to be

cloaking himself in an alleged public concern in order to achieve his true objective—which is to punish Cal Sierra for firing him."

The trial court further found that even if Robben's motives were genuine, he failed to state any basis for mandamus relief because he failed to identify any statute or regulation requiring the County to investigate Robben's complaints or Cal Sierra in general before extending the franchise agreement, a local ordinance Robben cited expressly provides the County is not liable or responsible for any Cal Sierra shortcoming, and public employees are generally immune from failing to investigate complaints. Accordingly, the trial court found Robben did not have a reasonable probability of prevailing on the merits and ordered Robben to post security of $35,000 within 30 days.

That same day, the trial court issued a written prefiling order, as well as a written order:  (1) declaring Robben to be a vexatious litigant under section 391, subdivision (b)(1) and (3); (2) finding no reasonable probability Robben would prevail in his action against the County; (3) prohibiting Robben from filing any new litigation in pro per without first obtaining leave of the presiding justice or judge where the litigation is proposed to be filed; (4) requiring Robben to furnish a $35,000 security to the court within 30 days; (5) staying the case until the security is furnished; (6) advising that the action will be automatically dismissed with prejudice should Robben fail to furnish the security within 30 days; and (7) setting a status conference for February 23, 2023, to confirm posting of security.

### Robben's Application to Vacate the Vexatious Litigant Order and Motion to Disqualify

Robben did not post the required security.  Instead, on February 14, 2023, he filed an eight-page partial document entitled, "PETITIONER'S NOTICE & VERIFIED APPLICATION TO VACATE PREFILING ORDER AND SECURITY PURSUANT TO CCP § 391.8."  Robben stated he was moving to vacate the prefiling order and the order demanding that he post security and asked for a decision on the merits of the

petition. Robben further stated he was filing a concurrent motion to disqualify Judge Seibert for cause and alternatively under a section 170.6 peremptory challenge.

That same day, Robben also filed a two-page document entitled, "VERIFIED MOTION TO DISQUALIFY JUDGE KEVIN SEIBERT FOR CAUSE AND ALTERNATIVE CCP 170.6 PEREMPTORY CHALLENGE." In the two-page motion, Robben asserted that he would "not have a constitutionally fair hearing, fair trial and due-process on any other matter before [J]udge Seibert" and "[f]or judicial economy," Robben referred the court to the "Application to Vacate for the facts and law mandating the disqualification of Judge Kevin Seibert." Robben further stated that in the alternative, he was moving for a peremptory challenge pursuant to section 170.6. Robben signed the motion "under the penalty of perjury in Sonora, CA."

On February 23, 2023, a hearing to check on the status of the security was held before Judge Seibert. The trial court advised Robben that his peremptory challenge pursuant to section 170.6 was previously approved in another case and confirmed as the order in this case. The trial court admonished Robben the bond must be posted by 5:00 p.m. that day and the County must be served with his "Motion for Reconsideration," but it would revise the time allotted for service due to inclement weather and the resulting closure of County offices. The trial court advised Robben that if he served the County, a "Motion for Reconsideration" would be heard at the next hearing date, and if the motion were denied and a bond was not posted, the petition would be dismissed. The trial court set a briefing schedule and set a hearing date for March 24, 2023.

The next day, Robben e-mailed the County a 186-page document entitled, "PETITIONER'S NOTICE & VERIFIED APPLICATION TO VACATE PREFILING ORDER AND SECURITY PURSUANT TO CCP § 391.8" (the application to vacate). The application to vacate: (1) reargued the vexatious litigant motion, in which he challenged the requirement to post security and the prefiling order, asserted the "Motion for Default" and "Special Motion to Strike" were oppositions to the County's motion

9.

which Judge Seibert refused to consider, and argued the merits of his petition; (2) reargued the grant of restraining orders against him in other cases; (3) argued that the vexatious litigant statute is unconstitutional; and (4) asked the court to report alleged wrongdoing of judges and attorneys to the state bar. Robben stated there were two ways to solve a problem—violence or nonviolence—and asserted he had diligently pursued a nonviolent resolution to remedy his problems with the County and the real parties in interest.

In support of his argument that Judge Seibert did not perform his judicial duties because he refused to allow Robben to present evidence at the hearing on the vexatious litigant motion, Robben embedded in the motion an affidavit of John Flynn, which was "Si[gn]ed under penalty of perjury 01-22-2023 in Sonora, CA," in which Flynn stated: (1) he attended the January 20, 2023 hearing on the vexatious litigant motion; (2) Judge Seibert told Robben he did not read any of Robben's filings because Robben's motion was not titled " 'Opposition or objections' " to the County's vexatious litigant motion; and (3) Judge Seibert refused to allow Robben to read his objections into the record or present evidence.

The County filed an opposition to the application to vacate, along with a declaration that attached the 186-page application it received from Robben via e-mail. The County argued Robben failed to present any evidence of a material change in facts upon which the vexatious litigant order was granted and he failed to show the ends of justice would be served by vacating the order, as required by section 391.8. The County further argued the application failed to comply with the Rules of Court, as it did not contain a notice of the motion and hearing, it exceeded the 15-page limit, and it did not include a supporting declaration. The County stated it submitted the application to vacate with a declaration because it was unable to verify the application was filed with the court.

On March 14, 2023, Robben filed a reply to the County's opposition, in which he argued the County failed to oppose the application to vacate and accused the deputy

10.

county counsel of fraud. Robben stated that by ordering the County to file a response, Judge Seibert "gains redemption for failing to read the earlier filings including this Petitioner's objections," as stated in Flynn's January 22, 2023 affidavit, which was embedded in the reply.

On March 23, 2023, Robben filed objections to the trial court's tentative ruling, in which he asserted Judge Seibert lacked jurisdiction since he timely filed a motion to disqualify Judge Seibert for cause and Judge Seibert failed to have the Judicial Council assign another judge to review the merits of that motion. Attached to the objections was another affidavit from John Flynn, which was "Signed under penalty of perjury" and dated March 23, 2023, who stated: (1) he witnessed the February 23, 2023 Zoom hearing; (2) Judge Seibert acknowledged reading "the motion for alternative peremptory challenge and then declare[d] he could not find the motion to disqualify for cause"; and (3) in Flynn's opinion, Judge Seibert had shown bias and prejudice against Robben because he denied Robben a hearing on the merits of his case before a fair and impartial judge.

### *The Denial of the Application to Vacate*

At the March 24, 2023 hearing before Judge Seibert, the court advised the parties it read the pleadings. The trial court noted Robben posted proceedings from the last hearing on YouTube and admonished him that he was not allowed to record audio or video of any court proceedings. The trial court advised Robben that if he repeated this act without the court's permission, he would face contempt of court proceedings.

The trial court heard argument from Robben and confirmed the bond had not been filed and was not imminently forthcoming. The trial court heard further argument on the issue of reconsideration and the County submitted on the tentative ruling. The trial court stated the tentative ruling was its order and confirmed Robben understood the order.

In its ruling, the trial court first noted that while Robben did not file a formal opposition to the County's motion to declare him a vexatious litigant, he did file several

11.

related pleadings and despite the impropriety of such filings, the court reviewed all of them. The trial court explained that none of the filings provided substantive grounds to oppose the vexatious litigant motion and to some degree, they supported the County's contentions.

The trial court noted that Robben submitted the 186-page application to vacate to the court for filing on February 16, 2023, which cited section 391.8. The trial court explained that in reading the substance of the application to vacate, it appeared that Robben was bringing a motion for reconsideration under section 1008 rather than a motion to vacate; therefore, the court set a briefing schedule expecting the parties to treat the motion as being brought under both sections.

The trial court found that if the application to vacate were treated as a motion for reconsideration under section 1008, it failed because Robben did not identify any new or different facts, circumstances, or law. Instead, Robben retraced some of the issues raised in his prior filings, "most notably that having to get prefiling permission offends his 'right' to freely sue people without regard." The trial court stated those issues were considered and rejected as part of the order declaring Robben a vexatious litigant and found Robben's motion on this basis bordered on frivolous.

As for treating the application as a motion to vacate under section 391.8, the trial court found Robben failed to address or produce evidence supporting any of the four conditions required for relief. The trial court further found Robben's post-order filings "strongly suggest a complete lack of insight, remorse or change," and Robben continued to cite federal authorities and proffer arguments on constitutional interests rejected by numerous courts. The trial court considered and rejected Robben's contention that it was error to entertain the vexatious litigant motion because the present case is a special proceeding for a writ of mandamus and not an ordinary civil action.

Therefore, the trial court denied Robben's application to vacate and because Robben confirmed a bond was not forthcoming, stated its tentative ruling would become

12.

its order. The trial further ordered that the dismissal would apply to all defendants and real parties in interest, and the entire case dismissed, because the undertaking was for their benefit given Robben's "shotgun approach to suing people, and the harassing communications [Robben] has had with his former employer."

Robben timely appealed from the March 23, 2023 order.[3]

## DISCUSSION

### I.       Motion to Disqualify Judge Seibert

Robben challenges Judge Seibert's refusal to recuse himself pursuant to Robben's motion to disqualify Judge Seibert either for cause under section 170.1, subdivision (a)(6)(A)(iii) or peremptory challenge under section 170.6. Robben contends Judge Seibert erred in denying his section 170.6 peremptory challenge on the ground that Robben already exercised that challenge with respect to Judge Krieg and Judge Seibert consented to disqualification for cause because he failed to respond to or strike his statement of disqualification.

As a threshold matter, we address Robben's motion to treat this portion of his appeal as a petition for writ of mandate. As Robben recognizes, "denial of a disqualification motion is not an appealable order and may be reviewed only by a writ of mandate in this court." (*Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 300; *People v. Panah* (2005) 35 Cal.4th 395, 444 [§ 170.3, subd. (d), which provides that the

---

[3]      When a plaintiff who is required to furnish security as a vexatious litigant fails to furnish security as ordered, the action is dismissed, and the appeal lies from the judgment or order of dismissal. (*Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 988, fn. 2.) Although the register of actions states the trial court dismissed the action on March 24, 2023, the clerk's transcript does not contain a signed order or judgment of dismissal; rather, there is only an unsigned minute order which states the trial court ordered the County's attorney to prepare an order and dismissal. In the absence of an order or judgment of dismissal, a reviewing court may deem the order appealed from as incorporating a judgment of dismissal and treat the notice of appeal as applying to that dismissal in the interest of justice and to prevent unnecessary delay. (*Ibid.*) We elect to do so here.

13.

question of disqualification of a judge may be reviewed only by a writ of mandate, is "the exclusive means for seeking review of a ruling on a challenge to a judge, whether the challenge is for cause or peremptory"]; § 170.3, subd. (d)[4].) Robben asks us to treat the judicial disqualification issue as a petition for writ of mandate because he timely filed a petition for writ of mandate with the California Supreme Court, which denied his application for leave to file the petition, and his claim is meritorious.

Although the County opposes the motion, we grant Robben's motion and exercise our discretion to treat the appeal concerning judicial disqualification as a petition for a writ of mandate. (See *Wells Properties v. Popkin* (1992) 9 Cal.App.4th 1053, 1055 ["we have the discretion to treat a purported appeal from a nonappealable order as a petition for writ of mandate"].) We do this because the bottom-line result from the parties' perspective would not change for the reasons we discuss below. Thus, "[t]o dismiss the appeal rather than exercising our power to reach the merits through a mandate proceeding would, under the unusual circumstances before us, be ' "unnecessarily dilatory and circuitous." ' " (*Olson v. Cory* (1983) 35 Cal.3d 390, 401.) Whether we dismiss the appeal or treat is as a writ petition, the County prevails, so we treat the appeal as a writ petition to forestall extraneous proceedings and promote judicial economy.

### A.      *Peremptory Challenge Under Section 170.6*

Section 170.6, subdivision (a)(2) permits "[a] party … appearing in … an action or proceeding" to disqualify the judge based on a sworn statement of the party's belief that the judge is prejudiced against the party. (*Pickett v. Superior Court* (2012) 203

---

[4]      Section 170.3, subdivision (d) provides: "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding. The petition for the writ shall be filed and served within 10 days after service of written notice of entry of the court's order determining the question of disqualification. If the notice of entry is served by mail, that time shall be extended as provided in subdivision (a) of Section 1013."

14.

Cal.App.4th 887, 892.) The judge has no discretion to refuse the challenge unless the statement is untimely or not in proper form. (*Ibid.*) "A party is limited to a single peremptory challenge 'in any one action or special proceeding.' " (*Ziesmer v. Superior Court* (2003) 107 Cal.App.4th 360, 364; § 170.6, subd. (a)(4).)

After Robben filed a section 170.6 peremptory challenge to Judge Krieg on December 27, 2022, the case was reassigned to Judge Seibert. In an ex parte order that Judge Krieg signed on January 27, 2023, but which was filed on February 2, 2023, Judge Krieg: (1) found that a peremptory challenge pursuant to section 170.6 "was previously approved in related case *Todd Robben v. Superior Court of Tuolumne*, CV64908"; (2) ordered Robben's December 27, 2022 peremptory challenge in the present case stricken; (3) filed Robben's November 29, 2022 section 170.6 challenge; and (4) confirmed "the approved peremptory challenge[] filed within Superior Court Case Number CV64908 … as an order within this Superior Court Case, CV64848." Thus, contrary to Robben's contention that the record does not contain a minute order of his section 170.6 challenge to Judge Krieg, Robben's section 170.6 challenge to Judge Krieg was granted in this proceeding. As such, Robben did not have a remaining section 170.6 challenge available to use against Judge Seibert when he filed his peremptory challenge on February 14, 2023.

Even if Robben had a second section 170.6 challenge available, the challenge to Judge Seibert was untimely. In civil actions assigned to a judge for all purposes, a section 170.6 motion must be made within 15 days after notice of the all-purpose assignment. (§ 170.6, subd. (a)(2).) While the record does not contain a document that specifically stated the case was reassigned to Judge Seibert as all-purpose assignment, the record contains a December 29, 2022 ex parte order that re-calendared the County's vexatious litigant motion, which had been pending before Judge Krieg and set for hearing on December 29, 2022, and rescheduled the hearing for January 20, 2023, before Judge Seibert, which was served on all parties, including Robben. Robben thus had actual

15.

notice of the case assignment to Judge Seibert through the December 29, 2022 order. (See *Cybermedia, Inc. v. Superior Court* (1999) 72 Cal.App.4th 910, 913 [where a party has already appeared in the action, the peremptory challenge must be filed "within 15 days of receiving notice of a change in the individual calendar judge assigned to the case"].) Since Robben did not file his section 170.6 challenge until February 14, 2023, it was untimely, whether measured from the December 29, 2022 ex parte order, or from the January 20, 2023 hearing on the vexatious litigant motion.

In sum, Judge Seibert did not err in refusing to recuse himself pursuant to section 170.6.

### B.  *Disqualification for Cause*

Robben contends Judge Seibert was disqualified because he failed to file a consent or answer to Robben's statement of disqualification for cause as required by section 170.3. Judge Seibert, however, was not required to file a consent or answer because Robben did not personally serve Judge Seibert or his clerk with a statement of disqualification.

If a judge who should disqualify himself fails to do so (see § 170.3, subd. (b)(4)), a party may "file with the clerk a written verified statement objecting to the hearing or trial before the judge and setting forth the facts constituting the grounds for disqualification of the judge. The statement shall be presented at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification. Copies of the statement shall be served on each party or his or her attorney who has appeared and *shall be personally served on the judge alleged to be disqualified, or on his or her clerk, provided that the judge is present in the courthouse or in chambers*." (§ 170.3, subd. (c)(1), italics added.)[5]

---

[5]  The County contends Robben never filed a legally adequate motion to disqualify Judge Seibert for cause because the February 14, 2023 motion did not include a notice of motion, memorandum of points and authorities, or any declarations and supporting

Section 170.3 provides three options to a judge challenged by a disqualification motion: (1) the judge may, "[w]ithout conceding his or her disqualification," request another judge to serve (subd. (c)(2)); (2) the judge may, "[w]ithin 10 days after the filing or service, whichever is later," file a consent to disqualification in which case the presiding judge appoints a replacement (subd. (c)(3)); or (3) the judge may file a written verified answer admitting or denying the allegations in the disqualification statement (*ibid*). If the challenged judge does not file a consent or answer within the time allowed under the statute, he or she is "deemed to have consented" to the disqualification. (§ 170.3, subd. (c)(4).)

Personal service of the statement of disqualification on Judge Seibert (or his clerk) was a prerequisite to any obligation of the judge to respond, and any obligation of the trial court to rule on the disqualification issue. On February 14, 2023, Robben filed what he called a verified motion to disqualify Judge Seibert for cause, but that motion did not set forth any facts constituting grounds for disqualification and the proof of service shows service only on counsel for the County and real parties in interest. The minute order of the February 23, 2023 hearing does not show that Judge Seibert or his clerk was personally served with the motion.

Robben points to his March 14, 2023 reply in support of his application to vacate, in which he embedded the cover sheet of his February 14, 2023 motion to disqualify and

---

evidence, and while Robben attempted to submit a declaration on March 13, 2023, it was rejected for improper formatting. A statement of disqualification, however, is not a motion and "the determination of a judge's disqualification is outside the usual law and motion procedural rules." (*Urias v. Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 422; *Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1336–1337, fn. 3 [the procedure set out in § 170.3, subd. (c), does not require a hearing date or provide for the filing of opposition papers; "[i]nstead, the statute provides that a party may file a written verified statement objecting to the hearing or trial before the judge"].) Although Robben was not required to comply with the law and motion procedures, he was required to submit a verified statement objecting to Judge Seibert conducting the hearing or trial.

17.

John Flynn's March 23, 2023 affidavit. Flynn stated in the affidavit that he viewed the February 23, 2023 hearing, over Zoom, he witnessed Judge Seibert acknowledge reading the motion for alternative peremptory challenge and declare he could not find the motion to disqualify for cause, he viewed the "original document in dispute marked as received by the court clerk" with the title of the February 14, 2023 motion to disqualify, and he previously witnessed Judge Seibert acknowledge he did not read Robben's prior objections in this case. This affidavit, however, does not show that either the February 14, 2023 motion or the March 14, 2023 reply were personally served on Judge Seibert or his clerk.

While the requests for disqualification were filed, the record does not show that they were personally served on Judge Seibert.[6] The disqualification issue thus was not properly placed before the trial court for decision, and Judge Seibert cannot be deemed to be disqualified by not formally responding to the motion. (See §§ 170.3, subds. (c)(3), (c)(4); 170.4, subd. (b); *Urias v. Harris Farms, Inc.*, *supra*, 234 Cal.App.3d at p. 421 [judge need not consider motion to disqualify until properly served].)

### C.     *The County's Motion to Strike*

In support of his petition for writ of mandate, Robben filed a document entitled, "SEPARATE SUPPLEMENTAL EXHIBITS AND AFFIDAVITS IN SUPPORT OF WRIT OF MANDATE," in which he asks us to consider a YouTube link that he claims is a Zoom recording of the February 23, 2023 hearing, and the following three documents that were not filed in the trial court: (1) a "VERIFIED MOTION TO RECONSIDER" dated March 24, 2023; (2) Robben's affidavit dated November 15, 2023; and (3) John Flynn's affidavit dated October 7, 2023.

---

[6]     We discern nothing in the motion, appellate record, or Robben's appellate briefs evidencing personal service of the motion on Judge Seibert or his clerk. (See § 417.10, subd. (f); Cal. Rules of Court, rule 2.150(a).)

The County filed a motion to strike the separate supplemental filing, which we deferred ruling on.  The County asserts the YouTube link and video are inadmissible because Robben did not establish an adequate foundation for them or provide any legal authority that shows such a video is admissible or may serve as an acceptable substitute for a transcript from a certified court reporter or an agreed or settled statement of the proceedings.  With respect to the documents, the County asserts they are inadmissible because they were never filed in the trial court and are not part of the record on appeal.  (*People v. Superior Court* (*Lavi*) (1993) 4 Cal.4th 1164, 1173, fn. 5 [declining to consider declarations that were not filed in the trial court]; *Spaccia v. Superior Court* (2012) 209 Cal.App.4th 93, 108 ["we do not consider evidence which was not before the trial court when it ruled on the motion"]; *Campbell v. Superior Court* (2008) 159 Cal.App.4th 635, 647 ["we do not consider evidence that was not submitted to the trial court" when reviewing a petition for writ of mandate]; Cal. Rules of Court, rule 8.486(b)(1)(B) [exhibits in support of writ petition consist of documents and exhibits filed in the trial court].)

Robben filed an opposition to the County's motion to strike.  With respect to the YouTube video link, Robben argues electronic recordings may be offered as evidence under California Rules of Court, rule 2.1040.  We note that while Robben provided the YouTube link in his trial court filings, he never provided a transcript of the electronic recording to the court or the County, as required by California Rules of Court, rule 2.1040(b)(1).  Accordingly, the trial court did not abuse its discretion in refusing to consider the recording.  (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1419 [trial court's exercise of discretion in excluding evidence subject to review for abuse of discretion].)  We decline Robben's request to take judicial notice of the YouTube video as an official act under Evidence Code section 452, subdivision (c), as the video is not an official act.

Robben also complains about the absence of a court reporter at the hearings, which he asserts requires reversal. In civil cases, a court reporter is required only on the court's order or a party's request. (§ 269, subd. (a)(1).) A litigant who "qualifies for a waiver of initial court filing fees is entitled … to a waiver of fees for the attendance of an official court reporter at a hearing or trial." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 598.) Robben obtained a court fee waiver at the outset of this litigation, which advised him that he was not required to pay reporter's fees for attendance at a hearing *if he requested that the court provide an official reporter*. The record does not show, however, that he requested a court reporter for these hearings. Therefore, he cannot complain that a court reporter was not present.[7]

We agree with the County that the supplemental exhibits must be stricken because they were not presented to the trial court, and the YouTube video is not properly before us. Accordingly, we grant the County's motion to strike Robben's supplemental filing.

## II. The Vexatious Litigant Motion

### A. The Basis for Vexatious Litigant Statutes

"The vexatious litigant statutes (§§ 391–391.7) are designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants." (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169.) Often these " ' "groundless actions" ' " are asserted " ' "against the judges and other court officers who decide or were concerned in the decision of previous actions adversely to [the litigant]." ' " (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 634.) Curbing such abuses was deemed necessary because such " ' "abuse of the system not only wastes court time and resources but also prejudices other parties waiting their turn before the courts." ' "

---

[7] If trial proceedings are not recorded by a court reporter, the appellant may obtain an agreed or settled statement in lieu of a reporter's transcript. (See Cal. Rules of Court, rules 8.134 & 8.137.) Robben has not done so.

20.

(*Id.* at p. 635.) " 'Since fewer sanctions are available against a *pro per* litigant, the power to declare him vexatious becomes an important tool for the courts to manage their dockets and prevent frivolous claims.' " (*Shalant*, at p. 1176.)

The vexatious litigant statutes contain "two distinct and complementary sets of remedies. In *pending* litigation, a defendant may have the plaintiff declared a vexatious litigant and, if the plaintiff has no reasonable probability of prevailing, ordered to furnish security. If the plaintiff fails to furnish the security, the action will be dismissed. [Citations.] In addition, a potential defendant may prevent the vexatious litigant plaintiff from filing any *new* litigation in propria persona by obtaining a prefiling order and, if any new litigation is inadvertently permitted to be filed in propria persona without the presiding judge's permission, may then obtain its dismissal." (*Shalant v. Girardi*, *supra*, 51 Cal.4th at p. 1171, italics added.)

The first remedy arises out of sections 391.1 through 391.6, while the second arises out of section 391.7. To implement these remedies, the trial court first must find the litigant to be vexatious. Under section 391.1, a motion seeking an order requiring security for the litigation to proceed "shall be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that they will prevail in the litigation against the moving defendant." (§ 391.1, subd. (a).) Under section 391.7, "[i]n addition to any other relief provided" in the statutory scheme, the court may "enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding justice or presiding judge of the court where the litigation is proposed to be filed." (§ 391.7, subd. (a).)

### B.    *Standard of Review and Applicable Law*

A vexatious litigant is defined in alternative ways. (§ 391, subd. (b).) As pertinent here, one definition is a person who, "[i]n the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five

21.

litigations other than in a small claims court that have been … finally determined adversely to the person ….” (§ 391, subd. (b)(1).) Another definition is a person who, “[i]n any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay.” (§ 391, subd. (b)(3).)

The term “ ‘[l]itigation’ ” is defined broadly as “any civil action or proceeding, commenced, maintained or pending in any state or federal court.” (§ 391, subd. (a).) “A litigation includes an appeal or civil writ proceeding filed in an appellate court.” (*Garcia v. Lacey* (2014) 231 Cal.App.4th 402, 406.) “A litigation is finally determined adversely to a plaintiff if he does not win the action or proceeding he began,” including cases the plaintiff voluntarily dismissed. (*Id.* at pp. 406–407.) “A particular litigation is finally determined when avenues for direct review (appeal) have been exhausted or the time for appeal has expired.” (*Id.* at p. 407, fn. 5.) Qualifying litigations for purposes of the vexatious litigant law include appeals dismissed as untimely (*Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1173–1174), and appeals from multiple orders within the same case that are finally determined adversely to the appellant (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 1005–1006 [appellant declared vexatious litigant based on appeals of numerous orders in a marital dissolution]).

“At the hearing upon the motion the court shall consider any evidence, written or oral, by witnesses or affidavit, as may be material to the ground of the motion.” (§ 391.2.) “When considering a motion to declare a litigant vexatious, the court must weigh the evidence to decide whether the litigant is vexatious based on the statutory criteria and whether the litigant has a reasonable probability of prevailing.” (*Goodrich v. Sierra Vista Regional Medical Center* (2016) 246 Cal.App.4th 1260, 1265.) Where evidence on the relevant issues is conflicting, “ ‘ “It is for the trial court to weigh the evidence and its finding, based upon substantial conflicting evidence, is in this as in every

22.

civil case binding upon the appellate court." ' " (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 784–785 (*Moran*).)  Of course, "[a]ny determination that a litigant is vexatious must comport with the intent and spirit of the vexatious litigant statute….  Therefore, to find that a litigant is vexatious, the trial court must conclude that the litigant[']s actions are unreasonably impacting the objects of [the] appellant's actions and the courts as contemplated by the statute." (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 970–971.)

Accordingly, we "review the trial court's order declaring a party to be a vexatious litigant for substantial evidence.  [Citation.]  We are required to presume the order declaring a litigant vexatious is correct and imply findings necessary to support that designation.  [Citation.]  A reversal is required only where there is no substantial evidence to imply findings in support of the vexatious litigant designation." (*Goodrich v. Sierra Vista Regional Medical Center*, *supra*, 246 Cal.App.4th at pp. 1265–1266.) "Likewise, a court's decision that a vexatious litigant does not have a reasonable chance of success in the action is based on an evaluative judgment in which the court weighs the evidence.  If there is any substantial evidence to support the court's determination, it will be upheld." (*Golin v. Allenby*, *supra*, 190 Cal.App.4th at p. 636.)

### C.     The Vexatious Litigant Finding

The trial court found Robben was a vexatious litigant under section 391, subdivision (b)(1) and (3).  With respect to the first ground, the record reflects there were nine actions that Robben filed in propria persona that were decided against him in the seven years before the County brought the vexatious litigant motion in October 2022: (1) *Robben v. El Dorado County*, United States District Court, Eastern District of California, case No. 2:16-cv-2695 MCE KJN P (district court dismissed action at Robben's request on Nov. 20, 2017); (2) *Robben v. Norling*, United States District Court, Eastern District of California, case No. 2:16-cv-2699 WBS EFB P (district court dismissed action on June 27, 2018, for failure to file an amended complaint); (3) *Robben*

23.

*v. Carson City*, United States District Court, District of Nevada, case No. 3:15-cv-00529 RFB VPC (district court dismissed action for failure to prosecute and on merits of defendants' motion to dismiss on July 24, 2018; (4) *Robben v. Wagoner*, United States District Court, Eastern District of California, case No. 2:16-cv-3022 JAM CKD P (district court dismissed action and entered judgment on Aug. 15, 2018, after Robben failed to file an amended complaint); (5) *Robben v. Calaveras County Superior Court*, United States District Court, Eastern District of California, case No. 2:16-cv-2884 JAM DMC P (district court dismissed action on Nov. 29, 2018, for lack of prosecution and failure to comply with court rules and orders after Robben failed to file an amended complaint); (6) *Robben v. City of South Lake Tahoe*, United States Court of Appeals for the Ninth Circuit, case No. 19-16214 (Ninth Circuit dismissed Robben's appeal on June 28, 2019, for lack of jurisdiction because the notice of appeal was untimely); (7) *Robben v. California Supreme Court*, United States Court of Appeals for the Ninth Circuit, case No. 19-15213 (Ninth Circuit dismissed Robben's appeal as frivolous on July 30, 2019); (8) *Robben v. Carson City*, United States District Court, District of Nevada, case No. 3:15-cv-00530 RFB CBC (district court dismissed action on Sept. 30, 2019, for failure to prosecute and for threats Robben made against the court); and (9) *Robben v. El Dorado County*, United States Court of Appeals for the Ninth Circuit, case No. 19-16318 (Ninth Circuit dismissed Robben's appeal on Oct. 29, 2020, for failure to prosecute).[8]

---

[8] The trial court performed its own research and discovered additional litigated matters that Robben maintained unsuccessfully as a self-represented litigant within the past seven years which, along with the cases the County identified, totaled 31 litigations. The trial court listed the case names and numbers, and the disposition of each case, in its minute order, but did not provide court documents to verify its findings. The additional cases are unnecessary to establish Robben met the criteria for declaring him a vexatious litigant under section 391, subdivision (b)(1).

These cases establish that Robben is a vexatious litigant under section 391, subdivision (b)(1), as he commenced at least five litigations in the seven-year period before the County filed its motion that were finally determined adversely to him. Robben raises several arguments concerning this finding, none of which showed the trial court erred.

Robben contends the court documents attached to the County's request for judicial notice do not provide the evidentiary facts needed to support a vexatious litigant determination because the disposition of those cases is inadmissible hearsay. Robben asserts the trial court could not take judicial notice of the truth of hearsay statements in the court records. But the record does not show that Robben objected to the County's request for judicial notice. To the extent Robben seeks for the first time on appeal to challenge the trial court's consideration of the court records on the ground the trial court could not judicially notice certain findings of fact, he has waived that objection. (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28–29, disagreed with on other grounds in *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315.)

In any event, the trial court was entitled to judicially notice the *existence* of various orders and decisions and the fact that Robben's complaints were dismissed and his appeals unsuccessful. (*In re Vicks* (2013) 56 Cal.4th 274, 314 [" '[t]he court may in its discretion take judicial notice of any court record in the United States,' " which " 'includes any orders, findings of fact and conclusions of law, and judgments within court records,' " as well as " 'the truth of results reached' "]; *Hart v. Darwish* (2017) 12 Cal.App.5th 218, 224 ["the hearsay rule does not bar judicial notice of a state court's ruling or its stated basis for that ruling"].) There is nothing in the record indicating the

trial court took judicial notice of the truth of any factual finding or hearsay allegation, as opposed to the *results* of Robben's litigation endeavors.[9]

Robben next contends the federal court proceedings cannot be included in the tally of cases because appearances by self-represented litigants in federal court are termed "pro se" and not "in propria persona" as required by section 391, subdivision (b)(1). However, the terms, " '[p]ro se,' " 'in propria persona,' 'pro persona' and 'pro. per.' can be used interchangeably." (*Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378, fn. 4.) The important fact is that Robben represented himself in the federal cases, regardless of whether his representation was termed pro se, in propria persona, or pro per. Moreover, federal court proceedings are expressly included in the cases that may be included in the case count, as section 391, subdivision (a), specifically defines " '[l]itigation' " as "any civil action or proceeding, commenced, maintained or pending in any … federal court." Therefore, the trial court properly used the federal cases in determining whether five litigations had been commenced within the seven-year period.

Robben asserts that only three of the cases may be considered relevant for purposes of the vexatious litigant statute, but he does not identify those cases or discuss why the other six cases do not satisfy the statutory criteria. By failing to support this argument with the necessary citations to the record, we may deem the argument waived or forfeited. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) Moreover, " ' "[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.] 'We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as

---

[9]     Although the trial court did not expressly rule on the County's request for judicial notice, it implicitly granted the request by citing the cases the County was relying on to establish Robben as a vexatious litigant.

waived.' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; *Trinkle v. California State Lottery* (2003) 105 Cal.App.4th 1401, 1413 ["unless a party's brief contains a legal argument with citation of authorities on the point made, the court may treat it as waived and pass on it without consideration"].)  While Robben cites some authorities in support of his argument, he fails to make any reasoned argument as to why the trial court erred.

We note that in the trial court, Robben argued the court could not consider the following three cases under *Garcia v. Lacey*, *supra*, 231 Cal.App.4th 402:  (1) *Robben v. Norling*, United States District Court, Eastern District of California, case No. 2:16-cv-2699 WBS EFB P; (2) *Robben v. Wagoner*, United States District Court, Eastern District of California, case No. 2:16-cv-3022 JAM CKD P; and (3) *Robben v. Calaveras County Superior Court*, United States District Court, Eastern District of California, case No. 2:16-cv-2884 JAM DMC P.

In *Garcia v. Lacey,* the appellate court held that denials of a prisoner's applications to proceed in forma pauperis did not constitute "litigations" under the vexatious litigant statutes because the denials prevented him from filing his complaints. (*Garcia v. Lacey*, *supra*, 231 Cal.App.4th at p. 411.)  In the above cases brought in the United States District Court for the Eastern District of California, however, the records show Robben's complaints were filed and the actions dismissed when Robben failed to file an amended complaint as ordered by the district court.

Robben also asserted *Robben v. City of South Lake Tahoe*, United States Court of Appeals for the Ninth Circuit, case No. 19-16214, could not be considered an action as the appeal was dismissed for lack of jurisdiction because the notice of appeal was untimely.  But as we have stated, an appeal that is dismissed as untimely is a final

determination of a litigation that is averse to the appellant within the meaning of section 391, subdivision (b)(1).  (*Fink v. Shemtov*, *supra*, 180 Cal.App.4th at pp. 1173–1174.)[10]

Robben asserts that a case the trial court found through its own research and cited in its minute order as being dismissed via a motion for summary judgment, *Robben v. Applied Technology & Science,* Tuolumne County Superior Court case No. CV64022, should not be relied on because Robben settled the case.  Robben also asserts that in *Robben v. California Supreme Court*, Ninth Circuit Court of Appeals case No. 19-15213, the court clerks failed to file his documents related to habeas corpus.  Robben, however, did not produce any evidence below to support his assertions and even if these cases do not qualify under the vexatious litigant statute, there are sufficient cases without these to satisfy the statutory criteria.

Finally, the trial court found Robben met another independent criteria for vexatious litigants:  he "repeatedly files unmeritorious motions, pleadings, or other papers" (see § 391, subd. (b)(3)).  Robben makes no showing that these findings are unsupported by the evidence, and we must therefore presume they are correct.  (See *Holcomb v. U.S. Bank Nat. Assn.* (2005) 129 Cal.App.4th 1494, 1498–1499; *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.)  " '[O]ne good reason is sufficient to sustain the order from which the appeal was taken.' "  (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237.)  This ground alone supports a finding that Robben is a

_____

**10**    Since filing an appeal commences a new litigation for purposes of the statutes governing vexatious litigants, Robben's discussion of section 391.7's legislative history is irrelevant and incorrect.  (See §§ 391.7, subds. (a), (b), 391, subd. (a); see also *John v. Superior Court* (2016) 63 Cal.4th 91, 100 [appeals and writs filed by vexatious litigants are subject to the prefiling requirement if the vexatious litigant was the party who initiated the action below].)  Robben argues that a petition for review does not "count" as litigation under section 391 and the broadened definition of litigation in *McColm v. Westwood Park Assn.* (1998) 62 Cal.App.4th 1211, has led to absurd results.  This argument is irrelevant because none of the nine identified cases were petitions for review or writ petitions filed in the California appellate courts.

28.

vexatious litigant. Because Robben is a vexatious litigant, the trial court was authorized to issue a prefiling order under section 391.7, subdivision (a).

### D. *The Finding of No Reasonable Probability of Success*

The trial court determined Robben had no reasonable probability of success on the merits of his action against the County and ordered Robben to post $35,000 in security. Once the trial court determines the plaintiff is a vexatious litigant, the court "shall" order the plaintiff to furnish security for the benefit of the moving defendant if there is no "reasonable probability that the plaintiff will prevail in the litigation against the moving defendant." (§ 391.3, subd. (a).) The security is intended to compensate the defendant for its reasonable costs and attorney fees incurred in defending the suit. (*Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 49.) In assessing whether the vexatious litigant has a reasonable probability of success, the trial court may weigh the evidence presented on the motion. (*Moran*, *supra*, 40 Cal.4th at p. 786.)

Robben's petition alleges a single cause of action under sections 1085 and 1094.5, and Government Code section 815.6. The petition asserts the County had a ministerial duty to investigate purported state and federal law violations at Cal Sierra transfer stations that are owned and operated by Waste Management before approving the franchise agreement with Cal Sierra. The trial court found that Robben lacked standing to bring such a claim and, in any event, he could not maintain a mandamus action.

We address only whether Robben could maintain a mandamus claim, as that is dispositive. The Code of Civil Procedure provides for two types of petitions for a writ of mandate: (1) administrative mandamus under section 1094.5; and (2) traditional mandamus under section 1085. (*Scott B. v. Board of Trustees of Orange County High School of the Arts* (2013) 217 Cal.App.4th 117, 122–123.)

Section 1094.5 provides for issuance of a writ of mandate to inquire "into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and

29.

discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer ….." (§ 1094.5, subd. (a).) Robben complains about the County's award of the contract to Cal Sierra without investigating his claims of wrongdoing. But because " '[a] public entity's "award of a contract, and all of the acts leading up to the award, are legislative in character," ' " courts review decisions arising out of the award of public contracts under section 1085, not section 1094.5. (*Weinstein v. County of Los Angeles* (2015) 237 Cal.App.4th 944, 964; *San Diegans for Open Government v. City of San Diego* (2018) 31 Cal.App.5th 349, 363.)

Traditional mandamus under "section 1085 is used to review adjudicatory decisions when the agency is not required by law to hold an evidentiary hearing." (*Scott B. v. Board of Trustees of Orange County High School of the Arts*, *supra*, 217 Cal.App.4th at pp. 122–123.) The administrative decision is upheld "absent a determination the decision was 'arbitrary, capricious, or entirely lacking evidentiary support.' " (*Id.* at p. 122.) Although Robben seeks to set aside the County's award of the waste management contracts, the thrust of his action is that the County should not have awarded the contracts without investigating the alleged violations of state and federal law. Thus, the resolution of his petition depends on whether the County had a "mandatory duty" to investigate Robben's claims, as he seeks a writ of mandate compelling the County to do just that.

This requires Robben to establish that the County "has a clear, present, and ministerial duty to afford the relief sought," namely, to investigate his claims of wrongdoing, and Robben "has a clear, present, and beneficial right to performance of that duty." (*Hudson v. County of Los Angeles* (2014) 232 Cal.App.4th 392, 408; *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 868.) " 'A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning

30.

such act's propriety or impropriety.' " (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.)

Robben does not cite any statute or ordinance that mandates the County to investigate his complaints, much less investigate and act on them in a prescribed manner. Nor does Robben cite any statute or ordinance that mandates the County to consider the results of such an investigation when approving a waste management contract. Instead, Robben cites to Government Code section 815.6[11] as imposing a mandatory duty on the County. Government Code section 815.6, however, does not itself create a mandatory duty to investigate complaints. Instead, the statute is only applicable where another enactment at issue creates an obligatory duty that is designed to protect against the injury the plaintiff suffered. (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498–499.)[12] Robben does not identify such an enactment.

In his opening brief, Robben contends Public Resources Code section 40950 establishes a mandatory duty to investigate. That section is part of a chapter of the Public Resources Code pertaining to the development of integrated waste management plans. (Pub. Resources Code, § 40900, subd. (a).) Public Resources Code section 40950 requires a county which is not a city and county to "convene a task force to assist in coordinating the development of city source reduction and recycling elements …, the county source reduction and recycling element …, and to assist in the preparation of the countywide siting element …." (Pub. Resources Code, § 40950, subd. (a).) The statute

---

[11]    Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

[12]    Because Government Code section 815.6 does not create a mandatory duty to investigate Robben's complaints, Robben's arguments concerning governmental immunity are irrelevant.

lists what the task force is required to do "[t]o ensure a coordinated and cost-effective regional recycling system."[13] (*Id.*, § 40950, subd. (c).) It also requires the task force to "develop goals, policies, and procedures … to guide the development of the siting element of the countywide integrated waste management plan." (*Id.*, § 40950, subd. (d).)

There is nothing in Public Resources Code section 40950 that authorizes a county task force to investigate complaints regarding a solid waste franchise, much less impose a mandatory duty on the task force to investigate such complaints. Because Robben has not cited to any statute or regulation that imposes a mandatory duty to investigate his complaints, he has not shown that he has a probability of prevailing on a claim for traditional mandamus under section 1085.

Even if Robben has standing and no adequate remedy at law, the law and facts support the trial court's conclusion that Robben has no probability of prevailing on his claims for administrative and traditional mandamus. Accordingly, the trial court was required to order Robben to furnish security under section 391.3, subdivision (a).

Robben asserts the trial court could not order him to post security because there will not be a trial in this case since, as a petition for writ of mandate, this is a special proceeding. Robben rests this argument on the language of section 391.6, which states that when a motion for security pursuant to section 391.1 "is filed *prior to trial* the litigation is stayed …." (§ 391.6, italics added.) But in an action in ordinary mandamus under section 1085, "a full trial on the factual issues is contemplated." (*California Standardbred Sires Stakes Com., Inc. v. California Horse Racing Bd.* (1991) 231

---

**13** The task force's required actions are: "(1) Identify solid waste management issues of countywide or regional concern. [¶] (2) Determine the need for solid waste collection and transfer systems, processing facilities, and marketing strategies that can serve more than one local jurisdiction within the region. [¶] (3) Facilitate the development of multijurisdictional arrangements for the marketing of recyclable materials. [¶] (4) To the extent possible, facilitate resolution of conflicts and inconsistencies between or among city and county source reduction and recycling elements." (Pub. Resources Code, § 40950, subd. (c).)

32.

Cal.App.3d 751, 763.) Thus, even in a writ proceeding, the motion for security may be filed prior to trial. Moreover, section 391.1 specifically states that a defendant may move for an order requiring the plaintiff to furnish security "[i]n any *litigation* pending in any court of this state" and section 391.6 provides that when such a motion is filed before trial, "the *litigation* is stayed." Since the term "litigation" is defined to include "any civil … proceeding," writ proceedings are necessarily included within that term and covered by the vexatious litigant statutes. (§ 391, subd. (a).)

Robben also asserts he should not have been ordered to post security because the County, as a government entity, does not incur attorney fees, costs, or expenses. Robben apparently views the amount of security ordered as unreasonable. We review the trial court's determination of the amount of security for substantial evidence. (*Devereaux v. Latham & Watkins* (1995) 32 Cal.App.4th 1571, 1588, disapproved on other grounds in *Moran*, *supra*, 40 Cal.4th at p. 785, fn. 7.)

The County sought $50,000 in security, which it asserted was reasonable as Robben had a record and reputation of filing unmeritorious actions and appeals and sending excessive communications to public officials concerning his action which required counsel's attention. Deputy County Counsel Christopher Schmidt submitted a declaration in which he stated the County expended nearly 37 hours, totaling nearly $4,600 at $125 per hour, on Robben's case through the filing of the vexatious litigant motion. He further stated the County anticipated spending significant additional time to address Robben's present and future filings, since the defects in the petition would need to be addressed by demurrer and any remaining claims would require briefing and a hearing on the merits, as well as appeals Robben would be expected to file based on his pattern and practice in other litigation.

In ruling on the amount of security, the trial court noted that even if a defendant does not have a statutory basis to recover legal fees, the amount set for security can include legal fees which a prevailing defendant may recover from the bond, citing *Singh*

33.

*v. Lipworth* (2005) 132 Cal.App.4th 40. The trial court found that Schmidt did not adequately explain how he arrived at $50,000 and it seemed more likely the County's cost in defending the action would be less than that since Robben's pattern and practice was to allow cases to be dismissed before reaching the discovery or evidentiary phase. The trial court instead concluded Robben should furnish a bond of $35,000 for the benefit of the County and all its Boards, Committees, officials, agent, directors, and employees named in the action and serving in an official capacity.

The evidence shows the County would expend money to defend against Robben's petition by using the county counsel's office to defend itself. Security is ordered to assure payment of the County's reasonable expenses incurred in defending against Robben's suit, which certainly includes the costs the County incurs to defend itself and its employees and officers in this action. (See § 391, subd. (c) [" '[s]ecurity' " is "an undertaking to assure payment … of the party's *reasonable expenses, including attorney's fees and not limited to taxable costs, incurred in or in connection with a litigation …*." (Italics added)].) Robben does not cite any authority to the contrary. Accordingly, the trial court did not err in determining that $35,000 was a reasonable amount to order as security.

Finally, Robben contends as a purported "whistleblower," he is "immune" from having to furnish security under section 391.3. Robben does not cite anywhere in the vexatious litigant statutes that confers immunity from posting security on whistleblowers, and he has not presented reasoned argument on this issue. Accordingly, Robben has forfeited the argument. (*Cahill v. San Diego Gas & Electric Co.*, *supra*, 194 Cal.App.4th at p. 956.)

### E.    The Vexatious Litigant Statutes are Constitutional

Robben levels a barrage of constitutional challenges to the vexatious litigant statutes. He contends the statutes: (1) violate his First Amendment right of access to the courts; (2) violate due process and equal protection by unlawfully discriminating against

34.

indigent litigants; (3) impair the obligations of contracts; (4) are vague and overbroad; (5) violate state and federal ex post facto clauses; and (6) constitute unlawful bills of attainder.

The state and federal courts have repeatedly rejected such constitutional challenges. (*Moran*, *supra*, 40 Cal.4th at p. 786 [no improper denial of constitutional right to jury trial or due process, and no discrimination against "vexatious litigants of 'modest means' "]; *Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 221–222 [no deprivation of the right to due process of law]; *Wolfgram v. Wells Fargo Bank*, *supra*, 53 Cal.App.4th at pp. 55–61 [rejecting First Amendment, prior restraint, and due process challenges]; *Taliaferro v. Hoogs* (1965) 236 Cal.App.2d 521, 525–529 [no discrimination against poor litigants or those proceeding in propria persona]; *Wolfe v. George* (9th Cir. 2007) 486 F.3d 1120, 1124–1127 [rejecting challenges on grounds of bill of attainder, ex post facto, due process, equal protection, and overbreadth and vagueness, as well as other constitutional grounds].)

We see no reason to depart from these decisions. Accordingly, we reject Robben's challenges to the constitutionality of California's vexatious litigant statutes.

## III.    The Application to Vacate

Robben filed an application to vacate the prefiling order, which the trial court denied. Section 391.8 authorizes a vexatious litigant to file an application to vacate a prefiling order and remove his or her name from the list of vexatious litigants. (§ 391.8, subd. (a).) The court may grant such an application if the vexatious litigant shows "a material change in the facts upon which the order was granted and that the ends of justice would be served by vacating the order." (§ 391.8, subd. (c).) Factors that tend to show a material change in facts include: (1) evidence of a propensity for honesty; (2) genuine remorse for the costs the frivolous litigation imposed on defendants; (3) sincere effort at restitution; and (4) giving up the habit of suing people. (*Luckett v. Panos* (2008) 161 Cal.App.4th 77, 93–94.)

Robben asserts the trial court misconstrued his application to vacate as a motion for reconsideration, pointing out that he "literally and technically filed an 'Application to Vacate' " pursuant to section 391.8, subdivision (c), and not a motion for reconsideration under section 1008.[14] While he claims the trial court did not read or rule on the merits of his application to vacate, the record shows that at the March 24, 2023 hearing, the trial court advised the parties it read the parties' pleadings. Moreover, the trial court ruled on the merits of his application to vacate, finding Robben failed to address the conditions for relief or provide any evidence to support those conditions, and his post-order filings strongly suggested "a complete lack of insight, remorse or change."[15]

Robben does not make any substantive argument in his opening brief that this ruling is erroneous, but instead adopts the entire argument in his application to vacate "[t]o conserve the word count." We agree with the County that Robben forfeited his contention that the trial court erred in denying his application to vacate by merely incorporating his trial court arguments and not presenting any substantive argument in his opening brief.

"[I]t is not appropriate to incorporate by reference, into a brief, points and authorities contained in trial court papers, even if such papers are made a part of the appellate record." (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301,

---

**14** Since Robben claims he was not moving for reconsideration, we do not review the trial court's decision to treat the application as a motion for reconsideration and its denial of that motion. Robben asserts that he filed a separate "*motion to reconsider* the March 23, 2023 order," which the court clerk improperly rejected for filing. The register of actions shows the court clerk returned a document on March 24, 2023, which is the day the action was dismissed. Robben does not assert that this motion was directed toward the January 20, 2023 prefiling order. In any event, as we have granted the County's motion to strike the documents Robben submitted with his opening brief, which included the purported motion for reconsideration, this issue is not before us.

**15** While Robben asserts that the County conceded the merits of his application to vacate because it did not file an opposition to the application, the record shows the County filed an opposition on March 9, 2023, which addressed section 391.8.

fn. 2; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 109 ["An appellant cannot rely on incorporation of trial court papers, but must tender arguments *in the appellate briefs*"]; Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in appellate brief must be supported by argument and, if possible, by citation of authority].) If an appellant merely incorporates by reference arguments made in papers filed in the trial court and does not support a point by argument or citation to authority, the appellant's contention will be deemed forfeited on appeal. (*Colores*, at p. 1301, fn. 2; *San Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 558–559.)

Robben does not present any other argument on his application to vacate in his appellate briefing. Accordingly, he has not satisfied his burden of showing the trial court erred in denying his application.

## IV. The Motions Pending on Appeal

While the parties were briefing this appeal, they filed several motions that we deferred ruling on. In this opinion, we have already addressed and granted Robben's October 16, 2023 motion to treat the appeal concerning the judicial disqualification issue as a petition for writ of mandate, and the County's February 26, 2024 motion to strike.

This leaves three motions filed by Robben—a request for judicial notice and a motion to remove the case to federal court filed on March 19, 2024, and another request for judicial notice filed on April 10, 2024. Robben submitted these documents to support an argument he made for the first time in his reply brief, namely, that none of the judges and justices in California lawfully hold office because they are not bonded and have not taken what he asserts is the appropriate oath of office. But we do not consider arguments raised for the first time in a reply brief. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4 [" ' " 'points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before….' " ' "].) We decline to do so here.

Consequently, we deny as irrelevant to the disposition of the appeal:  (1) Robben's March 19, 2024 request to take judicial notice of a video that purports to explain that the judicial officers in the state did not take the oath of office or post surety bonds; (2) the March 19, 2024 motion to remove the case to federal court on the ground that no judicial officer in California lawfully holds office;[16] and (3) the April 10, 2024 request to take judicial notice of the "fact" that California's 1879 Constitution was repealed on November 8, 1960.

## DISPOSITION

The appeal from the trial judge's refusal to recuse himself pursuant to Robben's motion to disqualify is treated as a petition for writ of mandate, and the petition is denied. The judgment of dismissal is affirmed.  Respondent shall recover its costs on appeal.


DE SANTOS, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.

---

[16]     Under federal law, removal to a United States District Court is accomplished by the *defendant* filing a notice of removal in the *district court*.  (28 U.S.C. § 1446(a).) Robben's motion to remove does not comply with these requirements, as he is the petitioner in this action and the motion was not filed in the district court.  This provides another basis for denying the motion to remove.